UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, | : <br> : <br> : NO. |
| Plaintiff, | : <br> : |
| V. | : <br> : |
| BRIAN S. JAMES, | : <br> : |
| Defendant. | : <br> : |

**COMPLAINT**

North American Company for Life and Health Insurance ("North American" or the "Company"), by its undersigned attorneys, as and for its Complaint against Brian S. James ("James"), alleges as follows:

**INTRODUCTION**

1. North American files this action seeking judicial confirmation of the rescission of a life insurance policy based on material misrepresentations and omissions in the application inducing North American to issue the requested coverage on false pretenses. These misrepresentations and omissions were discovered during a post-issuance audit, which included a review of James's medical records, prior to the expiration of the two-year contestability period.

2. Importantly, no claim for benefits has been submitted under the subject life insurance policy, as the policyowner and insured, Brian James, is still living. During the course of conducting a routine quality control audit, however, North American discovered that the life insurance policy issued to Mr. James was the product of a material misrepresentation in the application.

1

3. In accordance with Indiana law, North American is bringing this action to ensure the efficacy of the rescission of Mr. James' insurance policy. Specifically, North American seeks a judicial declaration that the subject policy is void and effectively rescinded and that no benefits are payable to Mr. James or to any current or future beneficiaries designated in the subject policy.

4. Separate and apart from the right to rescind the policy on the grounds of a material misrepresentation, the efficacy of coverage under the subject policy was also subject to Mr. James being in the state of health that he had represented in the application for the policy. Because Mr. James was not in the state of health described in the application, the policy is void *ab initio* for the failure of a condition precedent.

5. Contemporaneously with service of the initial filings in this action, North American is requesting that Mr. James stipulate to a consensual judgment for rescission and will apprise the Court as soon as practicable if such an agreement is reached.

## PARTIES

6. North American is a life insurance company that is and was at all times material to this action a corporation organized and existing under the laws of Iowa, with its principal place of business in West Des Moines, Iowa, and is and was at all times material to this action a citizen of the State of Iowa.

7. Upon information and belief, Brian James is and was at all times material to this action an individual citizen of the State of Indiana, currently residing in Whiteland, Indiana, located within the Southern District of Indiana.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs, and is between citizens of different States, namely, North American, a citizen of Iowa, and Mr. James, a citizen of Indiana.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1421(b) because Mr. James resides in this judicial district and because a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

10. On January 20, 2021, Brian James completed, signed, and submitted an application for a $300,000 life insurance policy from North American, through an online life insurance application platform (the "Application").

11. Upon signing the Application, Mr. James certified that the responses to the questions in the Application were "complete and true to the best knowledge and belief. . . ." Moreover, Mr. James acknowledged that any person "who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law."

12. The Application further stated that "[a]ny insurance issued as a result of this application will not take effect until the first full premium is paid and the contract is delivered to and accepted by [North American] during the lifetime of any person proposed for insurance and while such person is in the financial condition and state of health described in all parts of this application."

13. Reasonably relying on Mr. James' representations in the application, North American issued Policy '421 to Mr. James at the premium classification of "Essential Non-Tobacco" and delivered it to him on December 8, 2021. Following North American's issuance and delivery of Policy '421 to Mr. James, North American obtained medical records for Mr. James

during the course of conducting a routine post-issuance audit. North American discovered the grounds for rescission upon reviewing those medical records.

### Misrepresentations and Omissions in the Application for Policy '421

14. Question 12 of the Application asked Mr. James: "In the past 10 years, have you been diagnosed or treated by a medical professional for: (select all that apply) . . . ." "Alcohol abuse" and "Depression or other mental health disorder" were among the multiple medical conditions that Mr. James could have selected as a response. Instead, Mr. James responded, "None of the above."

15. Mr. James also represented to North American that his height was six feet and one inch, and that he weighed 225 pounds.

16. Question 11 of the Application asked Mr. James: "In the past 6 months, have you lost more than 10 pounds?" Mr. James responded, "No."

17. According to the medical records obtained by North American pursuant to its post-issuance audit, on January 29, 2020, Mr. James underwent an annual physical examination by Dr. Sanjiv Gollakota at Community Physician Network Internal Medicine in Greenwood, Indiana. Dr. Gollakota noted that Mr. James described "some life changes recently that contributed to" feelings of anxiety and depression. Dr. Gollakota and Mr. James "discussed [the] importance of seeking help" for the anxiety and depression. Dr. Gollakota provided Mr. James "information on counseling" and also prescribed medication. Mr. James deferred the prescription until after he spoke with his wife, but Mr. James called the clinic two days later to accept a prescription for escitalopram (trade name "Lexapro"), an antidepressant of the selective serotonin reuptake inhibitor class.

18. On July 14, 2020, Mr. James saw Dr. Gollakota for a follow-up primary care examination. Mr. James reported to Dr. Gollakota that he was experiencing "the shakes" and that he was "concerned about his drinking." Dr. Gollakota "discussed alcohol cessation" and referred Mr. James to a specialist for management of his alcohol use. Clinical staff measured Mr. James' weight at this office visit as 285 pounds and seven ounces.

19. On July 21, 2020, Dr. Gollakota received results from a blood testing conducted at the July 14, 2020 office visit that showed an abnormal and elevated presence of liver enzymes in Mr. James' blood, suggesting poor liver health. Dr. Gollakota noted in Mr. James' chart that he would order a liver ultrasound and communicated the abnormal findings to Mr. James.

20. Upon information and belief, Mr. James did not undergo a liver ultrasound between July 21, 2020 and January 20, 2021, notwithstanding Dr. Gollakota's orders.

21. On or about July 30, 2020, Mr. James consulted with Julie McGuire, a psychiatric nurse practitioner, about his alcohol use. As a result of the consultation, Ms. McGuire diagnosed Mr. James with "alcohol use disorder, mild, abuse."

22. On January 22, 2021, Mr. James sought treatment for – among multiple complaints – dizziness and fatigue, and was seen by Dr. Daniel Taposh Saha at Community Physician Network Internal Medicine in Greenwood, Indiana. Mr. James described "feel[ing] exhausted all the time," that his "mind is not working right," and that he had been "sleeping '20 hours a day.'" Clinical staff measured Mr. James' weight as 262 pounds.

23. On February 4, 2021, Mr. James saw Dr. Gollakota for a follow-up primary care examination to discuss fatigue and "brain fog." Mr. James acknowledged that he consumed "3-4 [alcoholic] drinks a day" and experienced "ongoing tremors."

24. Mr. James' wife further described Mr. James' condition to Dr. Gollakota, explaining that Mr. James was "failing to [his] side" and had suffered "multiple falls," at least one of which "was due to drinking heavily." Mr. James' wife also noted that Mr. James "vomit[ed]" and "urinated himself." Mr. James' wife stated that Mr. James had been "experiencing these symptoms for the past 4 weeks" – a period of time encompassing the date of the Application.

25. Mr. James' diagnosis of alcohol use disorder on July 30, 2020 should have caused him to respond "Alcohol abuse" on Question 12 of the Application.

26. If Mr. James had truthfully answered "Alcohol abuse" to Question 12 of the Application, Mr. James would have been asked a reflexive question ("Reflexive # 1"): "In the past 10 years, have you been treated or advised to get treatment by a medical professional, or been a member of any self-help group for alcohol abuse?"

27. A truthful response to Reflexive # 1 for Mr. James was "Yes," given his referral by Dr. Gollakota on July 14, 2020 to a specialist for management of his alcohol use.

28. A "Yes" response to Reflexive # 1 would have resulted in an automatic rejection of Mr. James' application for life insurance coverage under North American's established underwriting standards.

29. Even if Dr. Gollakota's July 14, 2020 referral would not have triggered a "Yes" response to Reflexive # 1, a "No" response to Reflexive # 1 would lead to an additional reflexive question ("Reflexive # 2"): "In the past 2 years, have you been advised by a medical professional to reduce your alcohol use?"

30. A truthful response to Reflexive # 2 for Mr. James was "Yes," given Dr. Gollakota's discussion of alcohol cessation with Mr. James at the July 14, 2020 office visit.

31.     A "Yes" response to Reflexive # 2 would have resulted in an automatic rejection of Mr. James' application for life insurance coverage under North American's established underwriting standards.

32.     Mr. James misrepresented his health and omitted disclosure of multiple additional conditions. First, Mr. James represented that he weighed 225 pounds instead of the 262 pounds recorded during the January 22, 2021 office visit that occurred only two days after the date of the Application. Second, he misrepresented that he had not lost more than 10 pounds in the six months prior to the Application. That representation does not comport with his measured weight of 285 pounds and seven ounces on July 14, 2020 and his measured weight of 262 pounds on January 22, 2021 – a loss of weight of more than 22 pounds in six months. Third, Mr. James did not disclose his diagnosis of, and treatment for, anxiety and depression in response to Question 12 of the Application. Given the multiple misrepresentations already identified, North American has reasonable concerns regarding the truthfulness of Mr. James' representations throughout the Application.

33.     Based on the multiple misrepresentations and omissions already discovered by North American, it is reasonable to be concerned there are additional misrepresentations and omissions in the Application affecting the risks that North American unwittingly assumed, potentially providing additional, independent bases to rescind Policy '421. In the event such additional grounds are identified during discovery, those facts provide additional bases for the rescission of Policy '421.

34.     North American now seeks a declaratory judgment from this Court confirming the rescission of Policy '421, and extinguishing all potential rights, title, and interests in Policy '421 by Mr. James or by any current or future beneficiaries designated by Mr. James.

35. North American is further entitled to a declaratory judgment from this Court that Policy '421 was void *ab initio* for a failed condition precedent for coverage because Mr. James was not in the "state of health" described in the Application.

36. Contemporaneous with the service of pleadings upon Mr. James pertaining to this action, North American is tendering a check to Mr. James which comprises all premiums paid on Policy '421, plus interest. As required under Indiana law, if Mr. James does not timely accept the tendered funds, North American will file a motion for leave to deposit the funds with the Court for disposition under Rule 67 of the Federal Rules of Civil Procedure.

## COUNT I – DECLARATORY JUDGMENT

37. All prior paragraphs are incorporated by reference.

38. As recited in detail in the preceding paragraphs of this Complaint, Mr. James materially misrepresented his diagnosis of alcohol use disorder.

39. North American reasonably and justifiably relied on the truthfulness and accuracy of the information provided by Mr. James in response to the Application questions, including without limitation Mr. James' response to Question 12, in determining whether and on what terms to issue life insurance coverage to Mr. James.

40. If Mr. James had provided truthful and accurate representations and had complied with his disclosure obligations, North American would not have issued Policy '421, consistent with its established underwriting standards.

41. Because North American has filed this action with two years of the January 20, 2021 issuance of Policy '421, the material misrepresentation and omission gives rise to the right of rescission without the necessity of proving Mr. James' subjective intent to deceive, though such an inference is compelled by these facts.

42. Pursuant to Indiana law, North American is tendering a refund of premiums into the Court with the filing of this Complaint, subject to this Court's confirmation of deposit and direction.

43. Moreover, Policy '421 was void *ab initio* because Mr. James was not in and has never been in the state of health described in the Application, a condition precedent for the provision of life insurance coverage under the terms of Policy '421.

44. North American seeks and is entitled to a judicial declaration that Policy '421 is void *and* rescinded, and, that neither Mr. James nor any other person is entitled to any benefits or entitlements under the policy, including without limitation any benefits otherwise payable to current or future putative beneficiaries.

WHEREFORE, North American respectfully requests the Court enter an Order as follows:

A. Declaring that Policy '421 is void *and* rescinded based on Brian James' material misrepresentation and omission, and that no rights or benefits are payable to any person under Policy '421; and

B. Awarding North American such other or further relief as this Court deems appropriate, just and equitable.

## JURY DEMAND

Pursuant to Rule 28 of the Federal Rules of Civil Procedure, although this single count complaint seeks equitable relief from the Court, North American demands a trial by jury of all issues at law placed at issue in this action, if any, that are deemed to be triable before a jury.

Dated: January 12, 2023         MANDEL RAUCH & LAMMERS, P.C.

_____
Derek Mandel
Indiana Bar No. 13829-49
704 Adams Street, Suite F
Carmel, IN  46032
Telephone: 317-848-7000
Facsimile: 317-848-6197
Email: dmandel@mhmrlaw.com


GODFREY & KAHN, S.C.
Brian C. Spahn, Wisconsin Bar No. 1060080
(pro hac vice application forthcoming)
Nicholas Bezier, Wisconsin Bar No. 1101618
(pro hac vice application forthcoming)
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Telephone:  414-273-3500
Facsimile:  414-273-5198
Email: bspahn@gklaw.com
            nbezier@gklaw.com

*Attorneys for Plaintiff North American Company for Life and Health Insurance*

28562156.1